UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| AMERICAN EXPRESS TRAVEL RELATED SERVICES, INC., | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 3: 08-58-DCR |
| V. | ) ) | |
| COMMONWEALTH OF KENTUCKY, KENTUCKY DEPARTMENT OF TREASURY, and | ) ) ) ) | |
| TODD HOLLENBACH, Treasurer, In His Official Capacity, | ) ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) ) | |

*** *** *** ***

This case is before the Court for consideration of the Motion to Dismiss filed by Defendants Commonwealth of Kentucky, Kentucky Department of Treasury, and Todd Hollenbach, in his official capacity as Treasurer ("Defendants"). [Record No. 27] These Defendants ask the Court to dismiss the Complaint [Record No. 1] filed by Plaintiff American Express Travel Related Services, Inc. ("American Express" or "Plaintiff"). At issue is the constitutionality of legislative enactments that shorten the presumptive abandonment period of traveler's checks from 15 years to 7 years.

The legislative enactments at issue are Part III, Section 30 of House Bill 406 ("Section 30") and House Bill 704 ("HB 704"). Section 30 reads as follows:

-1-

> 30.     Abandonment of Traveler's Checks: Notwithstanding K.R.S. 393.060, traveler's checks held or owing by a banking or financial organization shall be presumed abandoned when the period of time the traveler's checks have been outstanding exceeds seven years, unless the owner has within seven years corresponded in writing with the banking or financial organization concerning the traveler's checks, or otherwise indicated an interest as evidenced by a memorandum on file with the banking of financial organization.

Part III, Section 30, HB 406.  HB 704 mirrors the language of Section 30.  The relationship between Section 30 and HB 704 is discussed in more detail below.  American Express challenges the constitutionality of both provisions.

## I.     BACKGROUND

The Kentucky General Assembly passed House Bill 380 ("2006 Budget Bill") to apply to fiscal years 2007 to 2008.  The 2006 Budget Bill substituted a 7-year presumed abandonment period for traveler's checks in place of the existing 15-year period.  This provision was an amendment to K.R.S. 393.060, which had provided for an original 15-year period.  In response to this enactment, American Express filed suit in Franklin Circuit Court against the Commonwealth of Kentucky, the Kentucky Department of Treasury, the Treasurer in his official capacity, and the State Budget Director in his official capacity.

The Franklin Circuit Court ruled in favor of the Plaintiff on the grounds that the legislature did not follow the "constitutional and statutory procedures that have been created to protect Kentucky's citizens from stealth legislation." [Record No. 8, Exhibit C]  Specifically, the circuit court found that the legislature had failed to meet the notice and publication requirements of Section 51 of the Kentucky Constitution by attempting to amend K.R.S. § 393.060 within a budget bill. [Record No. 8, Exhibit C]  However, the court did not rule on the

-2-

question of the constitutionality of the actual presumed abandonment period.  The State Budget Director appealed this decision and the Kentucky Court of Appeals dismissed the appeal on procedural grounds in October 2008.  [Record No. 23, Attach. 1]  An appeal from that decision has been filed.

In 2008, the General Assembly passed House Bill 406 ("2008 Budget Bill") which included Section 30, a provision that once again amended K.R.S. § 393.060 to reflect a 7-year presumed abandonment period.  Additionally, the General Assembly passed HB 704, which contained, in substance, the same information as Section 30.  However, HB 704 was a measure taken to comply with the Franklin Circuit Court's ruling from the 2006 Budget Bill.  HB 704 followed the notice and publication procedures that the Franklin Circuit Court had found were integral to the constitutionality of the 2006 Budget Bill provision.  [*See* Record No. 8]

American Express filed suit in this Court on July 28, 2008, seeking declaratory and injunctive relief.  [Record No. 1]  It bases its suit on both federal and state grounds.  The federal claims, asserted under 42 U.S.C. 1983, allege that Section 30 and HB 704 violate the Due Process Clause of the 14th Amendment; the Contract Clause of Article 1, Section 10, of the United States Constitution; and the Takings Clause of the 5th Amendment.  The state claims allege that Section 30 and HB 704 violate provisions of the Kentucky Constitution – specifically, the provisions that mirror the above federal constitutional provisions, along with Sections 42, 51, and 56, which govern the title of laws and the length of legislative sessions.  In essence, the Commonwealth of Kentucky and American Express are locked in a battle over the "float," or,

the investment income generated from possession of traveler's check proceeds before they are cashed.  The Defendants lay claim to these funds based on its sovereign escheat power.

## II.    STANDARD OF REVIEW

This Court will grant a motion brought pursuant to Rule 12(b)(6) "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  A court must construe the complaint in a light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief.  *See Ley v. Visteon Corp.*, 540 F.3d 376, 380 (6th Cir. 2008); *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 724 (6th Cir. 1996).  "Factual allegations contained in a complaint must raise a right to relief above the speculative level." *Bassett v. Nat'l Coll. Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007)).  In other words, the plaintiff's arguments "require[] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1964-1965.  However, heightened fact pleading of specifics is not required– only enough facts to state a claim to relief that is plausible on its face.  *See Bassett*, 528 F.3d at 426.  The Court may consider the complaint, as well as "any exhibits attached thereto, public records, [and] items appearing in the record of the case." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (citation omitted).  Additionally, a federal court sitting in diversity must apply the law of the forum state.  *Lukowski v. CSX Transp., Inc.*, 416 F.3d 478, 484 (6th Cir. 2005).

-4-

### III.    ANALYSIS

#### A.    Abstention

The Defendants argue that the Court should abstain from hearing this action.  They base their argument on two doctrines: (1) *Younger* abstention, which prohibits federal courts from interfering with ongoing state proceedings; and (2) *Pullman* abstention, which prohibits federal courts from resolving a federal constitutional issue when state law is uncertain and a state court's clarification of state law might make the federal court's constitutional ruling unnecessary.  Both doctrines are based on seminal Supreme Court cases: *Younger v. Harris*, 401 U.S. 37 (1971) and *R.R. Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941).

As a general rule, district courts have an obligation and a duty to decide cases properly before them, and "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976).  In the present case, the requirements for the *Younger* abstention doctrine have been met as to the Plaintiff's state claim in Count VI of the Complaint, alleging violation of §§ 42 and 56 of the Kentucky Constitution.  This issue is being addressed by the Franklin Circuit Court.  *See Williams v. Grayson*, Civil Action No. 08-CI-856 (Franklin Circuit Court).  Therefore, the Court will not interfere with the state court's determination of these state law issues.  *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S.1 (1987).

However, abstention is not appropriate regarding Plaintiff's federal claims of Due Process, Contract Clause, and Takings Clause violations.  Although the federal claims concern two state legislative enactments, the outcome of the litigation turns on an interpretation of federal

constitutional law, not state law.  These federal claims are certainly matters which may be resolved by this Court.

###    B.    Eleventh Amendment Immunity

The Defendants next argue that this suit is barred by the Eleventh Amendment to the United States Constitution.[1]  States have long enjoyed certain immunities from suit in federal court.  The concept of sovereign immunity derives not only from the Eleventh Amendment, but also from the structure and history of the Constitution itself, along with older fundamentals of state sovereignty existing before the ratification of the Constitution.  *Alden v. Me.*, 527 U.S. 706, 713 (1999).  This immunity bars suits by citizens of the state itself as well as citizens of other states or foreign countries.  *See Hans v. La.*, 134 U.S. 1 (1890).  Thus, American Express' claims against the Commonwealth of Kentucky and the Kentucky Department of Treasury are barred by the protective arm of the Eleventh Amendment.  The Department of Treasury is clearly a part of the state for purposes of sovereign immunity.  *See Perry v. Se. Boll Weevil Eradication Found.*, 154 Fed. App'x 467, 473 (6th Cir. 2005) (unpublished).  Although sovereign immunity is subject to numerous exceptions,[2] none apply to these claims, and the Court is therefore unable to exercise jurisdiction.  *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 474 (6th Cir. 2008).

---

1.    "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any foreign state." U.S. CONST. amend. XI.

2.    The Sixth Circuit has provided a recent summation of exceptions to Eleventh Amendment sovereign immunity.  *See Ernst v. Rising*, 427 F.3d 351, 358-359 (6th Cir. 2005) (listing, among other exceptions: waiver, county and municipal corporations, injunctive relief against state officials, Congressional abrogation, and federal prosecution).

However, the Amended Complaint as to Todd Hollenbach, in his official capacity as State Treasurer, does fall within the exception to sovereign immunity established by the Supreme Court in *Ex parte Young*, 209 U.S. 123 (1908).  In *Ex parte Young*, the Supreme Court held that the Eleventh Amendment does not bar suits against state officers to enjoin violations of federal law.  This holding is premised on the conclusion that state officers, unlike the state itself, act with no authority when violating the Constitution or other federal laws.  Thus, any time a state official seeks to enforce an unconstitutional legislative enactment, the state imparts to him none of its protective immunities.  *See id.* at 159-160.  This exception was reaffirmed in *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635 (2002), in which the Supreme Court provided a formulation of the applicable test: "In determining whether the doctrine of Ex parte Young avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."  *Id*. at 645 (internal citation omitted).  "An allegation of an ongoing violation of federal law where the requested relief is prospective is ordinarily sufficient to invoke the *Young* fiction."  *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 281 (1997).

Here, American Express has requested declaratory and injunctive relief, asking the Court both to declare Section 30 and HB 704 unconstitutional and to enjoin the Defendants from enforcing either provision.  [Record No. 18]  Unless this Court finds the legislation unconstitutional, state officials will enforce the laws and the Plaintiff alleges that its constitutional rights will be violated.  The Defendants have voluntarily agreed not to enforce, or attempt to enforce, either HB 704 or Section 30 during the pendency of this litigation;

however, this temporary cessation does not change the prospective nature of the requested relief. The Plaintiff is not requesting damages to compensate for past injuries, but is instead asking for a declaration and injunction against official action on the part of Hollenbach. *See Edelman v. Jordan*, 415 U.S. 651 (1974).

However, an important exception to the *Ex parte Young* doctrine is that federal courts may not enjoin state officials from violating state law. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89 (1984); *see also McNeilus Truck & Mfg., Inc. v. Ohio ex rel. Montgomery*, 226 F.3d 429, 438-439 (6th Cir. 2000). In other words, although this Court may entertain the federal Constitutional claims against Todd Hollenbach, it may not hear the pendent state law claims. The only appropriate claims for this Court's review are the federal claims asserted against Todd Hollenbach for violations of the Due Process, Contract, and Takings Clauses of the United States Constitution.

### C. American Express' Claims

Claims brought under 42 U.S.C. § 1983 must embody two elements: (1) the defendant must be acting under the color of state law; and (2) the defendant's conduct must deprive the plaintiff of rights secured by federal law. *Brunner*, 548 F.3d at 475. The Defendants do not dispute that Todd Hollenbach, as Treasurer, is acting under the color of state law. Instead, the dispute turns on whether the Plaintiff has satisfied the second element by showing that its constitutional rights under the Due Process, Takings, and Contract Clauses have been violated.

### 1. Due Process Claim

Although American Express does not specify whether its Due Process claim is procedural or substantive in nature, it is clear that the Due Process claim at stake is substantive. American Express alleges that HB 704 and Section 30 violate the Due Process Clause because they arbitrarily extinguish American Express' property interest in traveler's check funds. The Plaintiff's requested relief is for the Court to declare the legislation unconstitutional. This argument falls within the ambit of substantive due process. *See Eidson v. State of Tenn. Dept. Of Children's Servs.*, 510 F.3d 631, 635-636 (6th Cir. 2007). Although substantive due process claims take on myriad uncertain forms, the Plaintiff has asserted one recognized by the Sixth Circuit: a violation of substantive due process "occurs when arbitrary and capricious government action deprives an individual of a constitutionally protected property interest." *Warren v. City of Athens, Ohio*, 411 F.3d 697, 707-708 (6th Cir. 2005). In other words, the Due Process Clause guarantees a right not to be subject to arbitrary or capricious action on the part of a state exercising its legislative power. *See Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1217 (6th Cir. 1992).

A due process claim is examined under a two-part analysis. First, the interest at stake must be a protected liberty or property interest under the Fourteenth Amendment. If such an interest exists, the court must then consider whether "the deprivation of that interest contravened the notions of due process." *Wojcik v. City of Romulus*, 257 F.3d 600, 609 (6th Cir. 2001). Regarding the first prong, American Express argues that it has a property interest, or "vested right" in these funds, while the Defendants characterize the same as a "unilateral expectation." [Record No. 9, p. 10; Record No. 8, p. 10]

-9-

Property interests are not created by the Constitution, but are instead created and defined by independent sources like state laws. *See Hamby v. Neel*, 368 F.3d 549, 557 (6th Cir. 2004). Thus, the first prong of the due process analysis requires the Court to examine Kentucky law to determine whether American Express has a legitimate claim of entitlement to funds obtained from the sale of traveler's checks. *See Braun v. Ann Arbor Charter Tp.*, 519 F.3d 564, 573 (6th Cir. 2008) (stating that "[p]roperty rights are created and defined by independent sources such as state law and not by the Constitution").

Kentucky law defines a traveler's check as "an instrument that is payable on demand, drawn on or payable at or through a bank, is designated by the term 'traveler's check' and requires a countersignature by a person whose signature appears on the instrument." K.R.S. § 355.3-104. A purchase of a traveler's check is, in effect, a deposit with the financial institution issuing the check. A customer purchases a traveler's check from American Express and the purchase money passes to the bank until the check is cashed, in the same way a deposit remains with a bank until it is withdrawn. The relationship between a bank and depositor is that of a debtor and creditor; a deposit becomes a part of the bank's own funds. The bank then retains an interest in those funds until the money is claimed by the creditor. *Ky. Rock Asphalt Co. v. Helburn*, 108 F.2d 779, 781 (6th Cir. 1940); *Anderson Nat'l Bank v. Luckett*, 321 U.S. 233, 241 (1944) [hereafter, *Anderson Bank*]; *Scoggan v. Dillon*, 252 S.W. 2d 35, 37 (Ky. 1952) ("The deposit of money in a bank passes title and it becomes part of the assets of the bank with an implied contract that the sum will be repaid upon demand, the relationship of creditor and debtor being created."); *Ferguson Enter., Inc. v. Main Supply, Inc.*, 868 S.W.2d 98, 99 (Ky. App. 1993).

-10-

A bank's property interest in funds from traveler's check is extinguished upon the occurrence of either of the following events: the customer uses the traveler's check or the state's presumptive abandonment period begins.  Currently, the presumptive abandonment period in Kentucky is set at 15 years, as it is in every other state within the United States.  American Express issues traveler's checks to its customers free of charge.  This business decision was based on American Express' reliance on a statutory presumptive abandonment period of 15 years.  With a significantly shortened abandonment period, American Express' decision to offer traveler's checks free of charge would not stand.  [Record No. 13, Attach. 2]  Since American Express enjoys a property interest in these funds until the presumptive abandonment period begins, it is the length of this period that goes to the heart of American Express' due process claim.

This issue brings the Court to the second prong of the due process analysis: whether shortening the presumed abandonment period violates notions of due process.  It is long-settled that a state, through the exercise of its inherent police power, may take custody of abandoned or unclaimed property in the interests of the unknown or at-large owner.  *See Provident Inst. for Sav. In Town of Boston v. Malone*, 221 U.S. 660 (1911) (holding that states may exercise their supervisory power to take custody of bank savings deposits).  The Plaintiff does not take issue with the state's inherent power to enact such laws; instead, it argues that the Defendants enacted HB 704 and Section 30 not as an abandoned property law, but as an eleventh hour attempt to raise revenue during a harried legislative session.  In support of this allegation, American Express points to the name of the legislation at various points in its history – "An Act relating

to revenue and taxation" and "An Act relating to fiscal matters and declaring an emergency" –
and the fact that the legislation was part of an appropriations and revenue bill. [Record No. 28]

American Express further alleges that changing the presumptive abandonment period
from 15 years to 7 years has no relationship to when traveler's checks are actually abandoned.
The Defendants step around the Plaintiff's argument by positing that the state's sovereign
authority to conserve unclaimed property for the benefit of the owner is necessarily accompanied
by the "authority to determine at what point property shall be presumed abandoned." [Record
No. 8, p. 12] Thus, any changes in the presumptive abandonment period would be within the
state's authority and would not constitute a burden on American Express' property interest. In
presuming this boundless authority, the Defendants misconstrue the holding of the Supreme
Court's decision in *Anderson Bank*. The pertinent quote from the opinion reads as follows:

> Since the bank is a debtor to its depositors, it can interpose no due process or
> contract clause objection to payment of the claimed deposits to the state, ***if the
> state is lawfully entitled to demand payment***, for in that case payment of the debt
> to the state, under the statute, relieves the bank of its liability to the depositors.

*Anderson Bank,* 321 U.S. at 242 (emphasis added) (citation omitted).

The Defendants' argument conveniently omits the qualifying statement above, namely,
whether the state is actually entitled to demand payment from the bank. More specifically, the
Defendants assume that their initial authority to enact an abandoned traveler's check law
includes the authority to arbitrarily change the abandonment period. In *Anderson Bank*, banks
challenged the constitutionality of a Kentucky statute providing for transfer of abandoned bank
deposits to the state. The statute passed constitutional muster and the Supreme Court ruled that
"prior to a judicial decree of actual abandonment, the depositors will not be deprived of their

-12-

property by the surrender of their bank accounts to the state." *Id.* at 241. However, the Supreme Court did not rule on the issue of determining the abandonment period. "We need not decide whether the procedure for determining abandonment in fact conforms to due process, for appellant has not attacked this procedure here and no such proceeding is before us." *Id.* This is precisely the procedure that American Express is attacking, through evidence showing that HB 704 was not enacted with any consideration of whether property was actually abandoned.

Although *Anderson Bank* does not address the validity of the abandonment period directly, it does lay out a few relevant limitations. First, the state must have a "substantial ground for belief that [the property has] been abandoned or forgotten." *Id.* at 240. Second, the state's determination should have "support in experience." *Id.* at 241. These limitations are bolstered by the general due process inquiry: whether the government action is "rationally related to a legitimate state objective." *Hamby*, 368 F.3d at 563 (citing *Weinberger v. Salfi*, 422 U.S. 749, 772 (1975)).

Here, there is a serious question regarding whether the funds may truly be considered abandoned after 7 years. American Express presents evidence that between 65% to 75% of all traveler's checks uncashed after 7 years are cashed within 15 years. Thus, while the Defendants assert that the funds from the checks may be considered abandoned after 7 years, requiring the state to take custodianship, the Plaintiff's evidence shows that the majority of checks outstanding after 7 years are cashed and therefore unforgotten by the original purchasers. States do not wield limitless power to proclaim unabandoned property abandoned and their authority to enact abandoned property laws is premised on the property's being actually or constructively

-13-

abandoned.  Taking all facts in the light most favorable to American Express, American Express has indeed raised a claim that the legislature has acted arbitrarily and irrationally in shortening the presumptive abandonment period.  Accordingly, American Express' due process claim survives the Defendants' motion to dismiss.

## 2.    Takings Claim[3]

Having determined that American Express holds a property interest in the funds, the Court turns to American Express' Takings Clause claim.  Three factors form the basis of a takings claim: the economic impact of the regulation on the claimant, the extent to which the regulation interfered with reasonable investment-backed expectations, and the character of the governmental action.  *Franklin County Convention Facilities Auth. v. Am. Premier Underwriters, Inc.*, 240 F.3d 534, 552 (6th Cir. 2001).

Regarding the nature of the governmental action, the Sixth Circuit has consistently ruled that the government has effected a taking where it "physically invade[s] or permanently appropriate[s]" the claimant's assets for its own use.  *Connolly v. Pension Ben. Guar. Corp.*, 475 U.S. 211, 225 (1986).  In the present case, the alleged violation is not the classic takings example in which the government physically invades property; however, the Supreme Court has clearly stated that economic regulations appropriating assets from private parties may be considered takings.  *Eastern Enter. v. Apfel*, 524 U.S. 498, 522-523 (1998).  And although the Plaintiff's

---

3.    The Sixth Circuit has repeatedly held that substantive due process claims have no place where a takings claim more directly addresses the alleged government violation.  *See, e.g., Montgomery v. Carter County*, 226 F.3d 758, 766-768 (6th Cir. 2000).  However, American Express' substantive due process claim is not a takings claim repackaged, but instead a distinguishable, separate "avenue . . . for assertion of a substantive due process claim."  *Warren v. City of Athens, Ohio*, 411 F.3d 697, 707 (6th Cir. 2005).

property interest is one fixed in time and dependent upon the actions of third parties (*i.e.*, customers), it is nonetheless a property interest.  It is settled that the Defendants have the power and authority to appropriate the Plaintiff's interest after 15 years; however, extending this authority to allow the Defendants to appropriate the interest at any time it desires is an impermissible appropriation of the Plaintiff's assets.

In support of the contention that the appropriation is impermissible, the Plaintiff submits that the Defendants are taking the funds for the Defendants' own use, rather than for any public use.  This public use distinction is an integral aspect of a takings claim.  In *Connolly* and *Raceway Park, Inc. v. Ohio*, 356 F.3d 677 (6th Cir. 2004), the Supreme Court and the Sixth Circuit approved state laws appropriating private assets where the state's aim was to protect the public.  Specifically, the *Raceway Park* plaintiffs argued that an Ohio law allocating revenues from horse race wagers impermissibly took assets from certain race track operators and distributed them to others.  The Sixth Circuit held that these measures were not a taking, but instead an effort by the Ohio legislature to protect and preserve the state horse racing industry. *Raceway Park*, 356 F.3d at 684.  Here, the legislation does not redistribute the traveler's check funds to any other entity.  Instead, the funds and the interest earned from the funds go straight to the state itself.  American Express alleges that the state is redistributing funds to itself and that the legislation is a revenue-raising measure.  As discussed above, however, the Plaintiff has presented evidence on this issue.

American Express submits that it will lose $282,798 in investment profit if HB 704 and Section 30 are put into effect.  According to an affidavit submitted by Jerreld Paulson, American

Express' Finance Director for the Travelers Cheque division, this figure is a combination of the loss the Plaintiff will sustain based on: (1) traveler's checks sold before the date of the legislation's enactment and (2) shorter-term investments based on future traveler's checks sold. [Record No. 13, Attach. 2]  In addition, American Express will have to adjust its service offerings and potentially eliminate the possibility of offering traveler's checks free of charge. Although this economic impact affects parties other than the claimant – in particular, the general public – it is an important consideration.  Both of these impacts on the Plaintiff and on the public interfere with reasonable investment-backed expectations.  American Express made investment decisions based on the 15-year abandonment period and these investments are clearly up-ended by the contested legislation.

Finally, "legislative acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and . . . the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way." *Eastern Enter.*, 524 U.S. 498.  In *Webb's Fabulous Pharm., Inc. v. Beckwith*, 449 U.S. 155, 163 (1980), the Supreme Court found that the Florida legislature had acted arbitrarily and irrationally by enacting a statute that allowed counties to retain interest earned from private interpleader funds deposited with county courts.  The statute amounted to "a forced contribution to general governmental revenues, and [was] not reasonably related to the costs of using the courts."  *Id.* at 163.  American Express has proffered sufficient evidence to allege that HB 704 and Section 30 effect just such a forced contribution to governmental revenues.

### 3.    Contracts Claim

-16-

The Contract Clause provides that "[n]o state shall . . . pass any . . . Law impairing the Obligation of Contracts."  U.S. Const. art. I, § 10, cl.1.  The purpose of the Contract Clause is not simply to prevent harm to the parties engaged in the contractual relationship.  The Contract Clause is meant to protect certainty in business dealings and to encourage private agreements. *See Home Bldg. & Loan Assoc. v. Blaisdell*, 290 U.S. 398, 428 (1934) ("The power of changing the relative situation of debtor and creditor . . . had been used to such an excess by the state legislatures, as to break in upon the ordinary intercourse of society, and destroy all confidence between man and man.")  To prove a violation of this provision, a plaintiff "must demonstrate that a change in state law has operated as a substantial impairment of a contractual relationship." *Quick Commc'ns, Inc. v. Mich. Bell Tel.*, 515 F.3d 581, 587 (6th Cir. 2008) (internal quotations omitted).  If a substantial impairment exists, the Court must inquire as to whether the impairment was "reasonable and appropriate in the service of a legitimate and important public purpose." *United States v. County of Muskegon*, 298 F.3d 569, 584 (6th Cir. 2002).

Under Kentucky law, when a deposit is made with a bank, a contract is created between depositor and bank.  *Anderson Nat. Bank v. Reeves*, 170 S.W.2d 350, 355 (Ky. 1942).  As discussed previously, the most applicable caselaw to the facts at hand concern bank deposits and banks' obligation to overturn abandoned bank deposits under state abandoned property laws. In *Anderson Bank*, the existence of a valid contract between the bank and the depositor is not questioned.

> The contract of deposit does not give the banks a tontine right to retain the money in the event that it is not called for by the depositor. It gives the bank merely the right to use the depositor's money until called for by him or some other person

-17-

duly authorized. If the deposit is turned over to the state in obedience to a **valid law**, the obligation of the bank to the depositor is discharged.

*Id.* (emphasis added).

Analogously, the contract between American Express and purchasers of its traveler's checks confers upon American Express the right to use the traveler's check funds until the check is cashed. In the *Anderson Bank* cases, both the Kentucky Supreme Court and the U.S. Supreme Court ruled that the Contract Clause is not violated where the state enacts a valid abandoned property law appropriating a bank's deposits. However, as with the Due Process and Takings claims, American Express has alleged facts sufficient to question whether HB 704 and Section 30 are actually abandoned property laws. One of the driving purposes behind the Contract Clause is to ensure certainty in private contracting; the Plaintiff asserts that it offers traveler's checks free of charge in reliance on the 15-year presumptive abandonment period. When the legislature shortens this abandonment period without any evidence that traveler's checks are actually abandoned after 7 years, American Express can hardly be afforded any certainty in its implied contract with purchasers of traveler's checks.

## D. Retroactivity

American Express' constitutional claims are premised on a finding that HB 704 and Section 30 operate retroactively. The Defendants assert that nothing in the language of the amendment suggests that it is to be applied retroactively. Further, the Defendants claim that the Plaintiff's legal obligation to report and remit unclaimed property is unchanged by HB 704 because regardless of its enactment, American Express would have been required to make its report on November 1 of each year. K.R.S. § 393.110. American Express counters that this is

an accurate, but superficial characterization of HB 704's effect. Although the amendment does not alter the Plaintiff's obligations regarding the reporting requirements for the abandoned traveler's checks, it changes the nature and effect of underlying prior transactions.

The question of retroactivity "is not always a simple or mechanical task." *Landgraf v. USI Film Products*, 511 U.S. 244, 268 (1994). In making this determination, a court must take into account "familiar considerations of fair notice, reasonable reliance, and settled expectations." *Id*. at 270. Defendants point to language in *Landgraf* that counsels against hasty characterization of a statute as retroactive, particularly where the affected party pleads only that the new law upset expectations based on the prior law. [Record No. 8, p. 10] In addition, the Defendants cite a recent case, *BellSouth Telecommunications., Inc. v. Southeast Telephone, Inc.*, 462 F.3d 650 (6th Cir. 2006), in which the Sixth Circuit states that "the fact that parties engage in conduct on the assumption that the law will allow them to act or to benefit in a certain manner is not a sufficient reason to refuse to apply a new law that renders that assumption misplaced." *Id*. at 662. Although the cited language alone appears conclusive, these cases, when viewed in their entirety, do not support the Defendants' argument.

In *Landgraf*, the Supreme Court specifically recognized that it had applied the "presumption against statutory retroactivity" in a large category of cases involving "new provisions affecting contractual or property rights, matters in which predictability and stability are of prime importance." *Id*. at 271. As discussed above, American Express' rights in the traveler's checks before they are abandoned is a property right. In *Bellsouth*, the Sixth Circuit was asked to decide whether the plaintiff had acquired a "vested right" to a dispute resolution

procedure that would be modified by a new FCC regulation. The plaintiff argued that it had acquired a vested right when it filed a notice of intent based on the original dispute resolution procedure. *Bellsouth*, 462 F.3d at 658. Here, American Express holds a property interest in the traveler's checks far more substantial than the one held by the *Bellsouth* plaintiffs. American Express is not claiming an interest based on the filing of a notice but on the legitimate acquisition of funds. In keeping with the *Landgraf* decision, American Express' interest in the preexisting funds is certainly an interest that was acquired with the aim of keeping it for 15 years. It was an interest that was strategically acquired, as evidenced by American Express' decision to offer traveler's checks free of charge.

In summary, the Court finds that both HB 704 and Section 30 would operate retroactively to harm this interest in preexisting funds, supporting American Express' constitutional claims.

### IV.    CONCLUSION

Sovereign immunity bars Plaintiff American Express' claims against Defendants Commonwealth of Kentucky and the Kentucky Department of Treasury. However, American Express has met its burden of establishing federal constitutional claims against Defendant Todd Hollenbach, in his official capacity as State Treasurer. The remaining state claims are barred pursuant to the Supreme Court's decision in *Pennhurst State School*. 465 U.S. 89.

Accordingly, it is hereby **ORDERED** as follows:

1.    The Defendants' motion to dismiss [Record No. 27] is **GRANTED**, in part, and **DENIED**, in part;

-20-

2.      The Plaintiff's claims against Defendants Commonwealth of Kentucky and Kentucky Department of Treasury are **DISMISSED**, with prejudice;

3.      The Plaintiff's state law claims are **DISMISSED**, without prejudice;

4.      The Plaintiff's remaining federal constitutional claims against Defendant Todd Hollenbach shall remain on this Court's active docket.

This 26th day of January, 2008.

Signed By:

_Danny C. Reeves_  DCR

**United States District Judge**