UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC., | ) ) ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3: 08-58-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| TODD HOLLENBACH, in his Official Capacity as Treasurer of the Commonwealth of Kentucky, | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

At issue in this case is whether K.R.S. § 393.060(2)[1], violates the Due Process, Takings, and/or Contract Clauses of the United States Constitution.  Plaintiff American Express challenges this legislation as an attempt to unconstitutionally misappropriate or interfere with its property and contract interests in traveler's check funds.  Defendant Hollenbach disagrees with this assertion and contends that the statute in issue does not violate any of the constitutional provisions identified by American Express.

After considering the parties' arguments, the Court concludes that American Express has met its burden of establishing that the statute in issue is arbitrary and capricious and violates the Due Process Clause of the United States Constitution.  Therefore, the Court will grant the relief

---

[1]   This legislation shortens the presumptive period of abandonment of uncashed traveler's checks from fifteen years to seven years.

requested by American Express.   [Record No. 41] The Defendant's motion for summary judgment will be denied.

### I.      Discussion

American Express does not charge a fee for issuing traveler's checks to its customers. The ability to offer this service *gratis* derives from profits earned on the traveler's check funds. American Express keeps the proceeds from the sale of a traveler's check until the purchaser or holder in due course redeems it.   During that time, American Express is able to generate investment profit from the proceeds.

Traveler's checks have no expiration date, but every state has legislation presuming that the checks are abandoned after fifteen years.   This time period was has been recommended by the National Conference of Commissioners on Uniform State Laws, in enacting and revising the Uniform Unclaimed Property Act on numerous occasions since 1954.   Once the checks are outstanding for fifteen years, a state's abandoned property law requires the bank to notify the state and remit the extant funds.   In Kentucky, the fifteen-year presumptive abandonment period was contained in K.R.S. § 393.060, an abandoned property law, until 2006, when the Kentucky General Assembly amended the statute to shorten the period to seven years.

Kentucky's attempt to shorten the abandonment period has already faced judicial scrutiny.   After the statute was enacted in 2006, American Express filed suit in Franklin Circuit Court, challenging the shortened seven-year period.   The state court ruled in favor of American Express based on the legislature's failure to enact the law according to proper notice and publication procedures.   However, it declined to address the amendment's constitutionality.

[Record No. 8, Exhibit C]  Kentucky's General Assembly proceeded to enact virtually the same amendment – a seven-year presumptive abandonment period – during the next legislative session.  American Express then filed suit in this Court on July 28, 2008, alleging that K.R.S. § 393.060(2), as amended, violated the Kentucky Constitution, the Due Process Clause of the 14th Amendment, the Contract Clause of Article 1, Section 10, of the United States Constitution, and the Takings Clause of the 5th Amendment.  [Record No. 1]

After this Court dismissed the state law claims pursuant to the doctrine of sovereign immunity, the Plaintiff moved for summary judgment on its remaining federal constitutional claims.  Treasurer Todd Hollenbach then filed a cross-motion for summary judgment.  Both motions have been fully briefed and argued and are ripe for review.

### A.    Due Process Claim

American Express does not specify whether its due process claim is procedural or substantive in nature.  Instead, it asserts that K.R.S. § 393.060 violates the Due Process Clause because it arbitrarily extinguishes its property interest in traveler's check funds.  The Plaintiff's requested relief is for the Court to declare the legislation unconstitutional.  Thus, its argument will be analyzed as a question of substantive due process.  *See Eidson v. State of Tenn. Dept. Of Children's Servs.*, 510 F.3d 631, 635-636 (6th Cir. 2007).

Although substantive due process claims take on myriad uncertain forms, the Plaintiff has asserted one recognized by the Sixth Circuit:  a violation of substantive due process "occurs when arbitrary and capricious government action deprives an individual of a constitutionally protected property interest."  *Warren v. City of Athens, Ohio*, 411 F.3d 697, 707-708 (6th Cir.

2005).  In other words, the Due Process Clause guarantees a right not to be subject to arbitrary or capricious action on the part of a state exercising its legislative power.  *See Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1217 (6th Cir. 1992).

A due process claim is examined under a two-part analysis.  First, the interest at stake must be a protected liberty or property interest under the Fourteenth Amendment.  If such an interest exists, the court must then consider whether "the deprivation of that interest contravened the notions of due process."  *Wojcik v. City of Romulus*, 257 F.3d 600, 609 (6th Cir. 2001).  Regarding the first prong, American Express argues that it has a property interest, or "vested right" in these funds, while the Treasurer characterizes the asserted interest as a "unilateral expectation."  [Record No. 9, p. 10; Record No. 8, p. 10]  Property interests are not created by the Constitution, but are instead created and defined by independent sources like state laws.  *See Hamby v. Neel*, 368 F.3d 549, 557 (6th Cir. 2004).  Thus, the first prong of the due process analysis requires examination of Kentucky law to determine whether American Express has a legitimate claim of entitlement to the funds obtained from the sale of traveler's checks.  *See Braun v. Ann Arbor Charter Tp.*, 519 F.3d 564, 573 (6th Cir. 2008) (stating that "[p]roperty rights are created and defined by independent sources such as state law and not by the Constitution").

Kentucky law defines a traveler's check as "an instrument that is payable on demand, drawn on or payable at or through a bank, is designated by the term 'traveler's check' and requires a countersignature by a person whose signature appears on the instrument."  K.R.S. § 355.3-104.  A purchase of a traveler's check is, in effect, a deposit with the financial institution

issuing the check.  A customer purchases a traveler's check from American Express and the purchase money passes to the bank until the check is cashed, in the same way a deposit remains with a bank until it is withdrawn.  The relationship between a bank and depositor is that of a debtor and creditor.  A deposit becomes a part of the bank's own funds.  The bank then retains an interest in those funds until the money is claimed by the creditor.  *Ky. Rock Asphalt Co. v. Helburn*, 108 F.2d 779, 781 (6th Cir. 1940); *Anderson Nat'l Bank v. Luckett*, 321 U.S. 233, 241 (1944); *Scoggan v. Dillon*, 252 S.W. 2d 35, 37 (Ky. 1952) ("The deposit of money in a bank passes title and it becomes part of the assets of the bank with an implied contract that the sum will be repaid upon demand, the relationship of creditor and debtor being created."); *Ferguson Enter., Inc. v. Main Supply, Inc.*, 868 S.W.2d 98, 99 (Ky. App. 1993).  A bank's property interest in funds from traveler's check is extinguished when the  customer uses the traveler's check or when the state's presumptive abandonment period begins.   Currently, the presumptive abandonment period in Kentucky is set at fifteen years, as it is in every other state.

As previously noted, American Express issues traveler's checks to its customers free of charge.  This business decision was based on the company's reliance on a statutory presumptive abandonment period of fifteen years.  With a significantly shortened abandonment period, American Express' decision to offer traveler's checks free of charge would not stand.  [Record No. 13, Attach. 2] And because the company enjoys a property interest in these funds until the presumptive abandonment period begins, it is the length of this period that goes to the heart of its due process claim.  This leads in to the second prong of the due process analysis: whether shortening the presumed abandonment period violates notions of due process.

It is long-settled that a state, through the exercise of its inherent police power, may take custody of abandoned or unclaimed property in the interests of the unknown or at-large owner. *See Provident Inst. for Sav. In Town of Boston v. Malone*, 221 U.S. 660 (1911) (holding that states may exercise their supervisory power to take custody of bank savings deposits).  However, American Express alleges that changing the presumptive abandonment period from fifteen to seven years has no relationship to when traveler's checks are actually abandoned.  The Treasurer attempts to side-step the Plaintiff's argument by positing that the state's sovereign authority to conserve unclaimed property for the benefit of the owner is necessarily accompanied by the "authority to determine at what point property shall be presumed abandoned."  [Record No. 8, p. 12]  Thus, any changes in the presumptive abandonment period would be within the state's authority and would not constitute a burden on American Express's property interest.

In presuming this boundless authority, the Treasurer misconstrues the holding of *Anderson Bank*.  The pertinent quote from the opinion provides that,

> Since the bank is a debtor to its depositors, it can interpose no due process or contract clause objection to payment of the claimed deposits to the state, ***if the state is lawfully entitled to demand payment***, for in that case payment of the debt to the state, under the statute, relieves the bank of its liability to the depositors.

*Anderson Bank,* 321 U.S. at 242 (emphasis added) (citation omitted).  The Treasurer's argument omits the qualifying statement above (*i.e.*, whether the state is actually entitled to demand payment from the bank).  More specifically, the Treasurer assumes that the state's initial authority to enact an abandoned traveler's check law includes the authority to arbitrarily change the abandonment period.

*Anderson Bank* involved a challenge to the constitutionality of a Kentucky statute providing for transfer of abandoned bank deposits to the state. The statute passed constitutional muster and the Supreme Court ruled that "prior to a judicial decree of actual abandonment, the depositors will not be deprived of their property by the surrender of their bank accounts to the state." *Id*. at 241. However, the Supreme Court did not reach the issue of determining the abandonment period. Instead, the Court noted that, "[w]e need not decide whether the procedure for determining abandonment in fact conforms to due process, for appellant has not attacked this procedure here and no such proceeding is before us." *Id.* This is precisely the procedure that American Express is attacking through evidence showing that the revised K.R.S. § 393.060 was not enacted with any consideration concerning whether the subject property was actually abandoned.

Although *Anderson Bank* does not address the validity of the abandonment period directly, it does address two relevant limitations. First, the state must have a "substantial ground for belief that [the property has] been abandoned or forgotten." *Id*. at 240. Second, the state's determination should have "support in experience." *Id*. at 241. These limitations are bolstered by the general due process inquiry: whether the government action is "rationally related to a legitimate state objective." *Hamby*, 368 F.3d at 563 (citing *Weinberger v. Salfi*, 422 U.S. 749, 772 (1975)).

After numerous attempts to avoid identifying any true grounds or objectives, the Treasurer finally presents a few muddled arguments in support of the seven-year abandonment period. First, he argues that more traveler's checks are cashed at the seven-year point than at any

year afterwards.  However, that observation does nothing to refute the fact that between a quarter and a third of traveler's checks are cashed between the seven-year point and the fifteen-year point.  In fact, the Treasurer hints that if the checks are not cashed after the first year or so, they are simply abandoned.  No evidence on this point is provided, except for the fact that more checks are cashed during the first year from purchase.  The Treasurer provides the following background to this argument:

> American Express is asking the court to stand logic on its head.  Logic dictates that it is irrational to invest one's money long-term in a non-interest bearing account.  The FDIC guarantees bank accounts up to $250,000, thus there is no risk involved in placing one's money in savings accounts.  So in order to grant summary judgment to American Express, the court would have to find that it is irrational for the General Assembly to believe that most people would not act irrationally.

[Record No. 42, p. 6]

The Treasurer points to "logic," rather than evidence, in the form of vague societal changes.  In addition to the advent of FDIC-insured savings accounts, other "massive change[s] in technology and behavior" like ATM machines and debit cards "undermine[]" any need for traveler's checks at all.  [Record No. 42, p. 10]  Basically, the Treasurer argues that traveler's checks are becoming obsolete and, as a result, the state should be allowed to take ownership of any benefit that may be wrested from the traveler's checks.  This argument is a diversion from the actual issue of whether traveler's checks are abandoned after seven years.  The commercial success of traveler's checks has nothing to do with whether the checks are abandoned.  Once again, the Treasurer has failed to provide any grounds to support a seven-year abandonment period.

The Court also disagrees with the Treasurer's assertion that the due process analysis of K.R.S. § 393.060 is governed by the very permissive rational basis test.  The Supreme Court established the relevance of that test in *Anderson Bank*, when it determined that enacting escheat laws applicable to presumed abandoned bank deposits was "rationally related" to the purpose of reuniting citizens with those bank deposits.  *Anderson Bank*, 321 U.S. 233.  Thus, the general idea that the state may take into its custodianship certain presumed abandoned property, even traveler's check funds, is not disputed.  The issue here is whether the presumptive abandonment period was reached in accordance with specific standards as set out in *Anderson Bank*.  The Treasurer has not produced any such evidence.

In addition, it is important to note another important difference in this case, as compared with *Anderson Bank*.  Here, there is clear evidence that the state legislature enacted the abandoned property law as an effort to raise revenue.  "Complete deference to a legislative assessment of reasonableness and necessity is not appropriate [where] the State's self-interest is at stake.  A government entity can always find a use for extra money, especially when taxes do not have to be raised."  *U.S. Trust Co. of New York v. New Jersey*, 431 U.S. 1, 25-26 (1977).

In this case, the Treasurer has not refuted evidence presented by American Express that K.R.S. § 393.060 was passed to raise revenue for the state, rather than to reunite citizens with lost property.  Instead, the Treasurer argues that courts must "accept at face value contemporaneous declarations of governmental purposes, or in their absence rationales construed after the fact," quoting *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 463 fn. 7 (1981).

[Record No. 42, p. 3]  However, as American Express points out, the *Clover Leaf* decision was based on an equal protection – as opposed to a due process – analysis.

To ascertain the "state objective" that is part of a due process analysis, a court may look to the legislative history of the disputed statute.  American Express presents the legislative history of K.R.S. § 393.060 as evidence of an eleventh-hour attempt to raise revenue during a harried legislative session.  In support, it points to the name of the legislation at various times in its history – "An Act relating to revenue and taxation" and "An Act relating to fiscal matters and declaring an emergency" – as well as the fact that the legislation was part of an appropriations and revenue bill.  [Record No. 28]  In addition, the Treasurer testified before the Kentucky House Appropriations and Revenue Committee in support of the bill, stating that "the practical effect of this will be that we'll shorten the escheatment period . . . which will accelerate some revenues that will be collected by my office, a good portion of those going into the general fund."  [Record No. 41, Ex. 7]

Finally, in the earlier state court action, the Franklin Circuit Court found that "the Defendant has admitted that the change in the escheat law for traveler's checks is a revenue raising measure."  [Record No. 41, Ex. 6]  Based on this finding, that court went on to make its determination that the legislature had not observed the proper procedures in enacting the legislation:  "In this case, the legislature attempted to raise revenue without an opportunity for public input or debate, thus aggrandizing itself in an already huge sphere of influence.  We believe this is precisely the kind of legislative action that made the framers of our present Constitution suspicious of legislative power."  [Record No. 41, Ex. 6]

-10-

Although this Court is not bound by the factual determinations of the Franklin Circuit Court, that court's determination – along with the other evidence – certainly lends support to the Plaintiff's argument. Because it is clear that the state's objective was to raise revenue rather than to reunite citizens with lost property, K.R.S. § 393.060 does not satisfy rational basis review. Shortening the presumptive abandonment period from fifteen to seven years is not "rationally related" to raising revenue for the state, even if revenue raising were a legitimate state purpose or objective. As a result, K.R.S. § 393.060 violates the Plaintiff's rights under the Due Process clause.

### B.    Takings Claim

American Express also alleges that K.R.S. § 393.060 constitutes an illegal "taking" by the state. The Takings Clause of the Fifth Amendment provides that private property shall not "be taken for public use, without just compensation." The Supreme Court has stated that the "the Takings Clause is designed not to limit the governmental interference with property rights *per se*, but rather to secure *compensation* in the event of otherwise proper interference amounting to a taking." *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 315 (1987) (emphasis original). K.R.S. § 393.060 has some characteristics in common with a taking in the sense that it is attempting to appropriate American Express' traveler's check proceeds (private property) and place them into the state's general funds. However, this claim simply does not fit within the takings paradigm.[2] It is not completely clear

---

[2]    To the extent that this finding, and others below, conflict with the Court's earlier Memorandum Opinion and Order [Record No. 35], the holding and conclusions in this Memorandum Opinion and Order prevail.

how the traveler's check funds will be utilized by the state – going to the state's general funds does not necessarily equate distribution for the public good.  Further wrinkles include the fact that the "property" in question is not a set amount, fund, or parcel and that the property will change with each year, and may not even exist during some years.

Analysis under the Takings Clause would be hackneyed and unnecessary because the facts in this case fit under traditional substantive due process analysis.  In *Eastern Enter. v. Apfel*, 524 U.S. 498, 522-523 (1998), the Supreme Court was divided over just this question when determining whether a statute was unconstitutional in requiring a former coal operator to fund health benefits for retired miners who had worked for the operator before it left the coal industry.  Five of the justices found that the conflict was more properly analyzed under a Due Process  rather than a Takings Clause analysis.  "[A]t the heart of the [Takings] Clause lies a concern, not with preventing arbitrary or unfair government action, but with providing compensation for legitimate government action that takes 'private property' to serve the 'public' good."  *Eastern Enter.*, 524 U.S. at 554.

Quoting the above language from *First English Evangelical*, the justices stated that the Takings Clause is concerned with cases that involve the payment of compensation, rather than the invalidation of a law.  *Id*. at 556.  The Due Process Clause safeguards citizens from arbitrary or irrational legislation.  Thus, there is no need to "torture the Takings Clause" to fit the contours of this case.  *Id*.  K.R.S. § 393.060 is an arbitrary legislative enactment with an impermissible purpose.  However, the fact that the statute violates the Due Process Clause does not "automatically trigger" a corresponding takings violation.  *Id*. at 556.  Based on the Court's

-12-

conclusion under the Due Process Clause, further analysis under the Takings Clause is unnecessary.

### C.     Contract Claim

For similar reasons, it is not necessary to address the Plaintifff's claim under the Contract Clause.  The Contract Clause provides that "[n]o state shall . . . pass any . . . Law impairing the Obligation of Contracts."  U.S. Const. art. I, § 10, cl.1.  The purpose of the Contract Clause is narrow, and the clause itself must not be read literally.  "[I]ts primary focus was upon legislation that was designed to repudiate or adjust pre-existing debtor-creditor relationships that obligors were unable to satisfy.  Even in such cases, the Court has refused to give the Clause a literal reading."  *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 502-503 (1987) (internal citations omitted).

Here, it does not appear that the facts presented fit the narrow contours of a Contract Clause claim.  The existence of a valid contract between American Express and a traveler's check purchaser is not questioned.  However, the traveler's check funds in dispute do not appear to be the sort of contracts targeted by the Contract Clause.  *Anderson Nat. Bank v. Reeves*, 170 S.W.2d 350, 355 (Ky. 1942).  The "contractual right" created in a traveler's check purchase is analogous to the one created between a bank and depositor:

> The contract of deposit does not give the banks a tontine right to retain the money in the event that it is not called for by the depositor. It gives the bank merely the right to use the depositor's money until called for by him or some other person duly authorized. If the deposit is turned over to the state in obedience to a **valid law**, the obligation of the bank to the depositor is discharged.

*Id.* (emphasis added).  However, this contractual relationship has little similarity to the contractual relationships traditionally recognized in the Supreme Court's Contract Clause jurisprudence.

For example, in *Home Building & Loan Assoc. v. Blaisdell*, 290 U.S. 398 (1934), the Supreme Court rejected a Contract Clause challenge to a Minnesota law that froze the operation of mortgage foreclosures from 1933 until mid-1935. *Blaisdell*, 290 U.S. 398.  The Court rejected another Contract Clause challenge to a Michigan law that allowed employers to reduce certain types of workers' compensation payments to disabled employees.  *General Motors v. Romein*, 503 U.S. 181 (1992).  Another upheld law involved a state's attempt to prevent oil and gas producers from avoiding the costs of a severance tax, even though existing contracts allowed them to do so.  *Exxon Corp. v. Eagerton*, 462 U.S. 176 (1983).  And finally, the Court upheld a law that changed the rights of a landowner under an earlier contract between the landowner and the state.  *El Paso v. Simmons*, 379 U.S. 497 (1965).

The above-cited cases are factually distinct in that they involve actual (as opposed to implied) contractual relationships between private parties.  However, based on the Court's prior determination of a Due Process violation, it is unnecessary to address the Plaintiff's Contract Clause claim under the facts presented.

## II.    Conclusion

American Express has met its burden of establishing that K.R.S. § 393.060(2) is arbitrary and capricious.  The Treasurer has failed to refute the evidence presented by American Express and has not presented any evidence that the legislation is "rationally related" to a legitimate

government objective. K.R.S. § 393.060(2), as amended by the legislative enactments described in the Plaintiff's Complaint, violates the Due Process Clause of the United States Constitution. Accordingly, it is hereby

      **ORDERED** as follows:

      1.     Plaintiff American Express' motion for summary judgment [Record No. 41] is **GRANTED**.

      2.     Defendant Treasurer Todd Hollenbach's motion for summary judgment [Record No. 42] is **DENIED**.

      This 15th day of June, 2009.



Signed By:
*Danny C. Reeves*  DCR
United States District Judge

-15-