UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC.,

Plaintiff,

V.

TODD HOLLENBACH, in his Official Capacity as Treasurer of the Commonwealth of Kentucky,

Defendant.

Civil Action No. 3: 08-58-DCR

**MEMORANDUM OPINION AND ORDER**

*** *** *** ***

This matter is pending for consideration of Plaintiff American Express Travel Related Services Company, Inc.'s ("AmEx") motion for leave to file a second amended complaint. [Record No. 75] Defendant Todd Hollenbach, in his official capacity as Treasurer of the Commonwealth of Kentucky ("the Treasurer"), opposes the motion. He argues that amendment of the complaint would exceed the scope of the remand order issued by the Sixth Circuit. He further contends that the proposed amendment is futile and, therefore, should not be allowed. For the reasons explained below, the Court will grant AmEx's motion to amend.

**I.**

The Court adopts the Sixth Circuit's summary of the facts underlying this case.

> American Express is in the business of issuing traveler's checks, which are preprinted "checks" in fixed dollar amounts ranging from $20-100. Upon the sale of a traveler's check, either by American Express directly or through a third-party

> vendor, American Express receives the funds tendered for the check and records the serial number of the check, its amount, and the date and place of sale; thereafter, American Express will honor the check in its full amount upon presentation by a holder in due course. American Express sells traveler's checks to its customers at face value, that is, free of any service charges or fees. It profits from this business by investing the funds it receives from the sale of traveler's checks, which it retains until the checks are redeemed. Traveler's checks have no expiration date, and although the majority of purchasers cash their traveler's checks within one year, American Express relies on a small percentage of traveler's checks remaining uncashed for several years. It can therefore invest some funds from outstanding traveler's checks in long-term, high-yield investments, up until state property law imposes a presumption of abandonment on uncashed traveler's checks. At that point, American Express must remit the outstanding funds to the state. Until recently, all fifty states followed the presumption that a traveler's check was abandoned if still outstanding more than fifteen years after issuance, as recommended in the Uniform Unclaimed Property Act.
>
> In 2006, the Kentucky General Assembly shortened the presumptive abandonment period for traveler's checks to seven years as part of its budget legislation for fiscal years 2007 and 2008 (the "2006 amendment"). American Express claims that the legislation will render its traveler's check business in Kentucky unprofitable, as the shorter presumptive abandonment period curtails its ability to place the funds from uncashed traveler's checks in long-term investments. Consequently, American Express challenged the 2006 amendment in Kentucky state court under both the Kentucky Constitution and the Federal Constitution. The Franklin Circuit Court invalidated the enactment for failure to comply with the procedure for amending legislation required by Section 51 of the Kentucky Constitution, but it did not consider American Express's other claims of unconstitutionality. . . .
>
> In 2008, the Kentucky General Assembly again passed legislation amending [Kentucky Revised Statutes] section 393.060 to reflect a seven-year presumptive abandonment period for traveler's checks (the "2008 amendment"). The enactment was incorporated into the budget legislation for fiscal years 2009 and 2010, as well as a separate bill designed to cure the procedural defects identified by the Franklin Circuit Court with respect to the 2006 amendment. In response, American Express filed [the instant] suit . . . .

*Am. Express Travel Related Servs. Co. v. Hollenbach*, 641 F.3d 685, 686-88 (6th Cir. 2011) (footnote and citations omitted).

AmEx sought declaratory and injunctive relief, arguing that the 2008 amendment violated the Due Process Clause of the Fourteenth Amendment, the Contract Clause, and the Takings Clause of the Fifth and Fourteenth Amendments.[1] The Court granted summary judgment in favor of AmEx after concluding that the 2008 amendment violated principles of substantive due process. *Am. Express Travel Related Servs. Co. v. Hollenbach*, 630 F. Supp. 2d 757, 760-64 (E.D. Ky. 2009). The Court did not address AmEx's remaining constitutional challenges. *See id.* at 764-66. However, on appeal, the Sixth Circuit held that the 2008 amendment could withstand rational basis review and therefore did not violate the Due Process Clause.

The court declined to consider AmEx's other claims, explaining:

> We are hesitant to decide these potentially meritorious claims without the benefit of a definitive ruling from the district court, which can expand the evidentiary record or request additional briefing or argument from the parties if needed. Therefore, remand is appropriate for the determination of whether the 2008 amendment effects an unconstitutional taking, unconstitutionally impairs American Express's contractual obligations, or is unconstitutionally retroactive in application.

*Hollenbach*, 641 F.3d at 694. The court then stated that it was remanding the case "for consideration of American Express's remaining constitutional challenges in proceedings consistent with this opinion." *Id.* at 694-95.

Following remand, AmEx sought leave to file an amended complaint. [Record No. 75] The proposed Second Amended Complaint contains two new counts, each of which alleges a

---

[1] AmEx also asserted violations of the Kentucky Constitution. Those claims were dismissed on abstention grounds and are not at issue here. *See Hollenbach*, 641 F.3d at 692 n.3 (noting that dismissal of the state-law claims was proper "because federal courts lack the power to enjoin a violation of state law" (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984))).

violation of the Commerce Clause. [*See* Record No. 75-1, p. 2] AmEx has also supplemented its due process claims in light of the Sixth Circuit's ruling. [*Id.*]

**II.**

Federal Rule of Civil Procedure 15 provides that leave to amend pleadings should be granted "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). Nevertheless, the Court may deny a motion to amend if the proposed amendment would be futile. *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 519 (6th Cir. 2010) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). A futile amendment is one that could not survive a motion to dismiss under Rule 12(b)(6). *Id.* Before considering the viability of AmEx's proposed amendment, the Court must determine whether amendment of the complaint is permissible under the mandate issued by the Sixth Circuit in this case.

**A. Scope of Remand**

Under the so-called mandate rule, "'a district court is bound to the scope of the remand issued by the court of appeals.'" *United States v. O'Dell*, 320 F.3d 674, 679 (6th Cir. 2003) (quoting *United States v. Campbell*, 168 F.3d 263, 265 (6th Cir. 1999)). Remands may be general or limited. *Id.* A limited remand "explicitly outline[s] the issues to be addressed by the district court and create[s] a narrow framework within which the district court must operate. In contrast, general remands give district courts authority to address all matters as long as remaining consistent with the remand." *Campbell*, 168 F.3d at 265. A remand is general unless it "convey[s] clearly the intent to limit the scope of the district court's review by outlining the procedure the district court is to follow, articulating the chain of intended events, and leaving no

doubt as to the scope of the remand." *United States v. Shafer*, 23 F. App'x 380, 382 (6th Cir. 2001). Thus, "[i]n the absence of an explicit limitation, the remand order is presumptively a general one." *United States v. Moore*, 131 F.3d 595, 598 (6th Cir. 1997).

Here, the appellate court stated that it was remanding the case "for consideration of American Express's remaining constitutional challenges in proceedings consistent with th[e] opinion." *Hollenbach*, 641 F.3d at 694-95. In the Treasurer's view, the Sixth Circuit "provided specific instructions as to what this Court should consider on remand: 'whether the 2008 amendment effects an unconstitutional taking, unconstitutionally impairs American Express's contractual obligations, or is unconstitutionally retroactive in application.'" [Record No. 76, p. 2 (quoting *Hollenbach*, 641 F.3d at 694)] Therefore, he argues, the remand was limited, and allowing AmEx to add its proposed Commerce Clause claims would be a violation of the Sixth Circuit's mandate. [*Id.*, pp. 2-3]

The Court disagrees. Although the Sixth Circuit identified AmEx's three remaining constitutional challenges and remanded the case for consideration of those challenges, the opinion contains no "explicit limitation" indicating that the Court may *only* consider those three issues. *Moore*, 131 F.3d at 598; *cf., e.g.*, *Sykes v. Anderson*, 625 F.3d 294, 323 & n.17 (6th Cir. 2010) (remanding "for the sole purpose of having the district court explain its reasons for denying remittitur" and noting: "The scope of the mandate on remand is extremely limited and provides only that the district court explain the denial of the Defendants' motion."); *Digital Filing Sys., L.L.C. v. Aditya Int'l*, 323 F. App'x 407, 421 (6th Cir. 2009) ("[R]emand for the limited purpose of modifying the scope of injunctive relief is necessary."); *Smith v. Botsford*

*Gen. Hosp.*, 419 F.3d 513, 521 (6th Cir. 2005) ("Our decision requires remand for the limited purpose of applying Michigan's cap on damages."); *Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 592 (6th Cir. 2002) (remanding "for the limited purpose of entering an appropriate award for postjudgment interest"). Nor did the court outline specific steps to be followed after the case was remanded. *Cf. Shafer*, 23 F. App'x at 382. Instead, it merely stated that further proceedings must be consistent with the opinion. *See Hollenbach*, 641 F.3d at 694-95. Indeed, the Sixth Circuit recognized that there would be some flexibility on remand, noting that this Court could "expand the evidentiary record or request additional briefing or argument from the parties if needed." *Id.* at 694. In short, nothing in the Sixth Circuit's decision precludes the Court from entertaining additional claims.

**B. Futility**

The Treasurer also contends that the proposed amendments would be futile. With respect to AmEx's retroactivity claim, however, he attacks not the amendment, but rather the underlying claim — which, as noted by AmEx, remains pending regardless of whether the instant motion is granted. [*See* Record No. 77, p. 11; Record No. 83, pp. 2-3] Since this claim will be reconsidered in any event, the Court finds no harm in allowing AmEx to amend it.

The Treasurer's remaining arguments are based on a mischaracterization of the proposed amendment and an incomplete view of the law applicable to Commerce Clause claims. Such claims are analyzed using a two-part test.

> The first inquiry requires a court to determine whether a state statute directly regulates or discriminates against interstate commerce, or whether its effect is to favor in-state economic interests over out-of-state interests. If a state statute does either, it is generally struck down without further inquiry. But if the statute has

> only indirect effects on interstate commerce and regulates evenhandedly, a court then moves on to the second inquiry, which requires the application of the balancing test set forth in *Pike v. Bruce Church, Inc.* That test upholds a state regulation unless the burden it imposes upon interstate commerce is clearly excessive in relation to the putative local benefits.

*Int'l Dairy Foods Ass'n v. Boggs*, 622 F.3d 628, 644 (6th Cir. 2010) (internal quotation marks and citations omitted). Under the first prong of the Commerce Clause analysis, a state statute is "virtually per se invalid" if it "has the practical effect of controlling commerce that occurs entirely outside of the state in question." *Id.* at 645.

Although this extraterritorial-effect rule is clearly the basis for AmEx's Commerce Clause claims, the Treasurer fails to mention it. Instead, he asserts that the disputed legislation does not discriminate against American Express or traveler's checks. [*See* Record No. 76, p. 8] He then skips to the *Pike* balancing test, again referring not to the burden on interstate commerce, but the burden on AmEx.[2]

The crux of the proposed Commerce Clause claims, however, is that the change in Kentucky law, by rendering AmEx's current business model economically infeasible, will directly affect the traveler's-check market elsewhere. [*See* Record No. 77, p. 9 ("[T]he Legislation fundamentally alters how AmEx must conduct its interstate (indeed global) business,

---

[2] The Treasurer's response also includes a puzzling argument concerning Kentucky Revised Statutes (KRS) section 393.130. That statute provides: "Any person who pays or delivers abandoned property to the [state] . . . is relieved of all liability which then exists or which thereafter may arise or be made in respect to the property." KRS § 393.130(1). It further allows one who has turned over abandoned property to "make payment to any person appearing to . . . be entitled thereto," then seek reimbursement from the state. KRS § 393.130(2). AmEx has not alleged that section 393.130 is unconstitutional. Yet the Treasurer asserts that AmEx "cannot repeal KRS 393.130 by [its] business practices" and that the statute "does not violate [AmEx]'s rights." [Record No. 76, p. 6]

which necessarily will affect purchasers, merchants and banks in other states and countries.")] AmEx asserts that if it is required to turn over traveler's checks eight years sooner, it will either have to start charging a fee — affecting the market nationwide — or stop honoring checks deemed abandoned in Kentucky, which would ultimately destroy the market for traveler's checks altogether. [Record No. 75-2, p. 4 ¶ 18; *id.*, p. 6 ¶ 26] Thus, AmEx alleges, the legislation "directly regulat[es] interstate and foreign commerce" and has the "practical effect" of "control[ling] commerce wholly beyond the boundaries of Kentucky." [Record No. 75-2, pp. 13, 18 ¶¶ 64-65, 88-89] This is sufficient to state a claim for relief. *See Boggs*, 622 F.3d at 645.

The Third Circuit's recent decision in *American Express Travel Related Services, Inc. v. Sidamon-Eristoff*, No. 10-4328, 2012 U.S. App. LEXIS 129 (3d Cir. Jan. 5, 2012), does not dictate otherwise. That case involved legislation amending New Jersey's unclaimed property statute to "retroactively reduce[] the period after which travelers checks are presumed abandoned from fifteen years to three years." *Id.* at *1. As in this case, AmEx alleged that the statutory amendment violated the Due Process Clause, Contract Clause, Takings Clause, and Commerce Clause. *See id.* at *1-2. The district court denied AmEx's motion for a preliminary injunction, and the Third Circuit affirmed, holding that AmEx had failed to show a likelihood of success on the merits of its constitutional claims. *Id.* at *30.

According to the Treasurer, the claims rejected by the Third Circuit in *Sidamon-Eristoff* "are identical to the constitutional challenges AmEx has made in this case, including the Commerce Clause challenges AmEx has included in its proposed Second Amended Complaint."[3]

---

[3] Although the Third Circuit concluded that AmEx was unlikely to prevail on any of its constitutional challenges, the sole issue presently ripe for decision in this case is whether AmEx may

[Record No. 81, p. 2] As AmEx points out, however, the Third Circuit's Commerce Clause analysis was limited to a lower level of scrutiny. *See* 2012 U.S. App. LEXIS 129 at *26 ("Because Amex has not alleged that heightened scrutiny applies, we look to the *Pike* balancing test."). Here, by contrast, AmEx's primary contention is that the Kentucky legislation has the practical effect of directly regulating interstate commerce and thus constitutes a *per se* violation of the Commerce Clause — *i.e.*, that heightened scrutiny applies. [*See* Record No. 75-2, p. 13 ¶¶ 64-65; Record No. 77, p. 10; Record No. 83, p. 3] Because the Third Circuit did not examine AmEx's Commerce Clause claims under this standard, *Sidamon-Eristoff* does not render the proposed Commerce Clause claims futile here. AmEx's proposed amendments to its retroactivity claims are likewise unaffected, as the Third Circuit did not consider whether retroactive application of the New Jersey law violated the Due Process Clause.

**III.**

The Sixth Circuit issued a general mandate in this case which does not preclude amendment of the complaint. Furthermore, the Treasurer has not established that AmEx's proposed amendment would be futile. Accordingly, it is hereby

**ORDERED** as follows:

(1) AmEx's Motion for Leave to File an Amended Complaint [Record No. 75] is **GRANTED**. The Clerk of the Court is directed to file the Second Amended Complaint. [Record No. 75-2]

---

file its Second Amended Complaint. Accordingly, the Court considers *Sidamon-Eristoff* only as it pertains to AmEx's proposed amendments.

(2) Briefing on AmEx's motion for summary judgment [Record No. 78], previously held in abeyance [*see* Record No. 80], may now resume. The Treasurer shall have twenty-one days from the entry of this Memorandum Opinion and Order within which to respond to the motion. AmEx may reply as provided in Local Rule 7.1(c).

This 7th day of February, 2012.




**Signed By:**
***Danny C. Reeves*** DCR
**United States District Judge**